UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,
    Plaintiff,

v.

JUAN JOSE RODRIGUEZ-CASTRO,
    Defendant.

C.A. No. 18-150-JJM-LDA

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Defendant Juan Jose Rodriguez-Castro moves to suppress all the evidence seized in his apartment by the Pawtucket Police Department. For the following reasons, the Court DENIES Mr. Rodriguez-Castro's Motion to Suppress. ECF No. 19.

*Facts*

While Caroline Leonardo, the mother of Mr. Rodriguez-Castro's child, was communicating with Mr. Rodriguez-Castro via FaceTime, she witnessed a suspected robber with a gun invade his apartment at 265 Prospect Street. Ms. Leonardo called 911 to report the suspected armed robbery and Pawtucket Police officers rushed to Mr. Rodriguez-Castro's apartment. When they arrived at the location, they apprehended three men fleeing from the residence. The Officers searched for the firearm used in the robbery but did not find it on the three suspects or in their vehicle. After the arrest, Pawtucket Police Officer Gagnon went to the apartment to speak

with Mr. Rodriguez-Castro and his roommate about what had occurred. Mr. Rodriguez-Castro and his roommate told Officer Gagnon that three males entered the apartment and held them to the floor at gunpoint. Mr. Rodriguez-Castro and his roommate positively identified the three suspected robbers through the window as they were outside the building. They also identified jewelry and watches that had been recovered from the three suspects as their own. Pawtucket Police Detectives Trout and Gould then arrived and spoke with Mr. Rodriguez-Castro and his roommate. While speaking with them, Detective Trout saw two computers, two color printers, a laminating machine and a shredder in plain view. Detective Trout also saw a box addressed to Mr. Rodriguez-Castro with an ATM-style card reader inside. Police Officer Gagnon performed a walk-through of the absent third roommate's bedroom and Detective Sullivan walked the rear yard of the apartment and the basement stairway. At the base of the staircase, Detective Sullivan found a closed door secured with a white electrical cable, untied the cable, and observed an apparent firearm that turned out to be a pellet pistol on the floor. Meanwhile, in the apartment, Detective Trout looked through two garbage bins in the kitchen near the rear door where the suspects fled from. In the garbage bins, Detective Trout found blank credit/ATM cards, an American Express card in the name of Joshua Smith, a Connecticut's driver license in the name of Joshua Smith, and a DHL package containing American Express signature stickers.

The Pawtucket Police then stopped searching, secured the scene, and Detective Trout applied for a warrant to search the apartment based on the observations from

the initial walk-through search. After obtaining a warrant, the Officers returned and thoroughly searched the apartment, resulting in the seizure of various computer and electrical equipment and other items used in suspected credit card fraud. The seized evidence resulted in charges of Conspiracy to Commit Bank Fraud, Possession of Unauthorized Access Devices, Possession of Device-Making Equipment, Possession of Document Making Implement and Authentication Feature, and Aggravated Identity Theft.

Mr. Rodriguez-Castro moves to suppress all the evidence seized in his apartment alleging that the walk through of his apartment was an unlawful warrantless search in violation of the Fourth and Fourteenth Amendments, and the items seized pursuant to the search warrant were illegally obtained as fruits of the lawful observations and discoveries during the initial search.

*Analysis*

First, the Officers were lawfully within Mr. Rodriguez-Castro's apartment as they had been called to the address after Ms. Leonardo reported that an armed robbery was occurring. After arresting the armed robbers as they were fleeing the rear of the building, the Officers went to Mr. Rodriguez-Castro's apartment to interview him and his roommate. There is nothing before the Court to support the finding that the Officers were unlawfully inside Mr. Rodriguez-Castro's apartment. The Officers also had a reasonable belief that a loaded firearm could be found within the apartment and conducted a limited search to retrieve it. When the Officers conducted their search, it was reasonable to believe that a loaded firearm may be

3

located within the apartment. First, Ms. Leonardo had informed the police that she observed a man holding a firearm and heard Mr. Rodriguez-Castro say that there was a firearm while they were communicating through FaceTime. Mr. Rodriguez-Castro and his roommate also informed the Officers that the robbers forced them to the floor at gunpoint. Although the robbers had been apprehended outside and close to Mr. Rodriguez-Castro's apartment, no gun had been found on them.

The "Fourth Amendment does not require police officers to delay in the course of an investigation" to obtain a warrant, "if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298 (1967). In similar circumstances in which police officers had a reasonable belief that a dangerous weapon may be present and multiple people are moving around the site, courts have upheld warrantless searches. *See United States v. Ibarra-Zelaya*, 465 F.3d 596, 605 (5th Cir. 2006) (affirming warrantless search of apartment for weapons when officers heard multiple people moving around the apartment, noting the deference to the judgment of law enforcement officers concerning the risks of a particular situation); *see also Martinez v. Connelly*, 2011 U.S. Dist. LEXIS 127293 (S.D.N.Y. 2011) (upholding warrantless search for weapons in an apartment in which the officers did not know if anyone else was in the apartment); *cf. United States v. Simmons*, 661 F.3d 151 (2d Cir. 2011) (rejecting warrantless search of room after apprehending suspect who admitted gun was in bedroom because the officers had already exercised control over occupant and neutralized any threat that the gun may have posed). Here, the Officers reasonably believed a loaded firearm had been left behind by the

4

armed robbers within an apartment with three unknown individuals who were free to move about and conducted a limited search of the garbage bins next to the door from which the robbers had fled.

After the search of the garbage bins, the Officers stopped searching, secured the scene, and Detective Trout applied for a warrant to search the apartment. The affidavit in support of the search warrant for Mr. Rodriguez-Castro's apartment was based on Detective Trout's observations of computer equipment seen in plain view and materials found in the garbage bin during his lawful search for the firearm.

*Conclusion*

For these reasons, the Court DENIES Mr. Rodriguez-Castro's Motion to Suppress Evidence. ECF No. 19.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 8, 2019